US BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed March 30, 2011**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CHAPTER 13 |
| JASON FERGUSON AND BOBBIE FERGUSON, | § | |
| | § | |
| DEBTORS. | § | CASE NO. 05-45596 (DML) |
| | § | |

## MEMORANDUM OPINION

Before the court are the *Amended First Interim and Final Application for Allowance of Fees and Reimbursement of Expenses for Attorneys for Tim Truman, Chapter 13 Trustee* (the "Application") and the *Supplement to Amended First Interim and Final Application for Allowance of Fees and Reimbursement of Expenses for Attorneys for Tim Truman, Chapter 13 Trustee* (the "Supplement" and, with the Application, the "Fee Request") both filed by the Law Office of St. Clair Newbern, III ("Newbern"). In response, Debtors and their attorney, Kimberly Stovall ("Stovall"), filed *Debtors'*

*Objections and Response to First Interim Application for Allowance of Fees and Reimbursement of Expenses and Amended First Interim and Final Application for Allowance of Fees and Reimbursement of Expenses for Attorneys for Tim Truman, Chapter 13 Trustee* (the "Objection"). The court conducted a hearing on the Application on November 15, 2010. The Supplement was filed on January 3, 2011, and the court held a further hearing on the entire Fee Request on January 4, 2011 (with the November 15 hearing, the "Hearing"). During the Hearing, the court heard testimony from Stovall; St. Clair Newbern III ("Mr. Newbern"); Carl Clarke ("Clarke"), an attorney who shares office space and resources with Newbern; chapter 13 trustee Tim Truman (the "Trustee"); Angela Allen, attorney for the Trustee; appellate attorney Kirk Pittard; Debtor Jason Ferguson ("Mr. Ferguson"); and attorney Anthony Petrocchi. The court also received into evidence exhibits identified as necessary below.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). This memorandum opinion includes the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

## I.    Background

Debtors commenced this chapter 13 case on June 3, 2005. Some weeks earlier, on April 12, 2005, Mr. Ferguson was the victim of a serious accident caused by Building Materials Corporation of America, CPC Logistics, Inc., and Robert Maddox (collectively the "State Court Defendants").

By the time of the filing of their chapter 13 case, Debtors had commenced suit against the State Court Defendants. Debtors disclosed the suit on their statement of financial affairs. As a result of an error allegedly made by their bankruptcy lawyer,

however, Debtors' Schedule B-2 failed to reflect their claims against the State Court Defendants. Debtors, however, made full disclosure of those claims to the Trustee at the meeting held in their case pursuant to section 341 of the Bankruptcy Code (the "Code")[1] and promptly amended their schedules to include the suit.

Upon learning of Debtors' bankruptcy and failure to list the claims against them in the schedules, the State Court Defendants sought to have the claims barred under the theory of judicial estoppel. *See In re Coastal Plains*, 179 F.3d 197, 210-12 (5th Cir. 1999) (bankruptcy court abused its discretion in concluding debtor's non-disclosure of claims did not judicially estop two plaintiffs, including the trustee for the debtor's bankruptcy estate, from pursuing claims against the debtor's largest unsecured creditor, where debtor knew of facts giving rise to its claims and had motive to conceal them); *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334-36 (5th Cir. 2004) (judicial estoppel barred trustee from substituting for personal injury claimants, since, among other things, the bankruptcy court "adopted" the claimants' contention that their personal injury claim was prescribed by issuing a "no-asset" discharge, and non-disclosure of the personal injury claim was not inadvertent). Despite the fact that two of the three elements for judicial estoppel were not met – the omission of the claims from the schedules was clearly inadvertent and the Trustee received full disclosure respecting them,[2] and neither the bankruptcy court nor any other court had acted in reliance on the omission – the trial court granted summary judgment on August 4, 2006, in favor of the State Court Defendants based on that theory.

---

[1]    11 U.S.C. §§ 101 *et. seq.*

[2]    Indeed, the Trustee presumably expected to receive proceeds of the litigation for the benefit of creditors.

At that point, the Trustee, perceiving the claims against the State Court Defendants as assets of Debtors' bankruptcy estate (*see* Code § 541(a)(1)), asked Newbern to serve as his special counsel to intervene in the state court suit and protect the Trustee's interests.[3] Newbern agreed to represent the Trustee, and they agreed that, the estate lacking funds, Newbern should be paid on a contingency basis. By the Trustee's application to employ Newbern, it was proposed that Newbern receive one-third of monies recovered from the State Court Defendants by the estate.

Presumably because Debtors had filed a motion for a new trial on September 6, 2006, the Trustee and Newbern believed it urgent that Newbern intervene in the state court proceedings. Thus, they sought expedited consideration of the application to employ Newbern. The application was filed and noticed on September 12 and the court considered the application at a hearing the next day (the "September 13 Hearing"). Having voiced concerns and qualifications on the record (as discussed below), the court at the September 13 Hearing authorized Newbern's retention.

Debtors' motion for a new trial was unsuccessful, as was an appeal of the summary judgment to the Court of Appeals. An appeal to the Texas Supreme Court, however, resulted in a reversal and remand of the case: Debtors' claims against the State Court Defendants were again alive. The Trustee participated through Newbern in each stage of the process, and Newbern filed briefs on behalf of the Trustee in the Texas

---

[3]     Stovall has argued that Newbern was not disinterested as a result of consultations with Debtors' bankruptcy counsel concerning Debtors' claim that bankruptcy counsel had committed malpractice in their case. While the court is troubled by this – the malpractice claim would also be estate property – special counsel to a trustee need not be disinterested. *See* Code § 327(e). On the other hand, disclosure of such a representation would certainly be required under Rule 2014(a) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE, and might well be a representation of an "interest adverse to the debtor or to the estate with respect to the matter on which [the] attorney is to be employed." *See* Code § 327(e). In any case, Newbern testified it did not represent Debtors' counsel (though Mr. Newbern did speak with him), and the balance of the record is consistent with that testimony.

Supreme Court. The Trustee's involvement arguably could have been of considerable significance, given the decision of the Court of Appeals for the Fifth Circuit in *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380 (5th Cir. 2008), as that case differentiated between the effect of judicial estoppel on a debtor and on the debtor's trustee.

Following the decision of the Texas Supreme Court, settlement discussions between Debtors and the State Court Defendants led to a proposal to Debtors of a settlement that would pay to the Debtors' estate (and, given that only $11,556.04 in unsecured claims were filed in their case, Debtors) a total of $1,000,000.

By the Fee Request, Newbern now seeks either one-third of the proceeds of the settlement of the claims against the State Court Defendants (based on Mr. Newbern's statements at the September 13 Hearing, this may be one-third of the proceeds after payment to Stovall), or fees and expenses of $48,628.67 plus "an enhancement of not less than two or three times the fees . . . ." *See* Supplement at 6. Debtors (and Stovall) object to Newbern's fees.

## II. Discussion

### A. Issues

The Objection raises a number of valid concerns but also asserts a number of grounds for denial of the Fee Request that are without merit. For example, as noted above, Debtors assert that Newbern represented Debtors' bankruptcy counsel in connection with their potential malpractice claims against him, but the court does not find that contention to be supported by the record. The court accordingly will limit its discussion to two questions: first, whether Newbern is entitled to a one-third contingency

fee; and second, whether Newbern's arrangement with Clarke is improper under Code § 504.

   B.   Newbern is not entitled to a one-third contingency fee

   Newbern claims that, because the Trustee applied to retain it on a one-third contingency basis, applicable Fifth Circuit precedent construing Code § 328 assures it of the full amount of its compensation.  *See Daniels v. Barron (In re Barron)*, 325 F.3d 690, 692-94 (5th Cir. 2003) (court abused its discretion by failing to award full amount due under contingency fee agreement, since any "intervening circumstances" justifying the court's departure from the terms of the fee agreement were foreseeable when the court approved it, and thus section 328(a)'s exception allowing the court to depart from the terms and conditions under which the court initially approved the professional's employment did not apply); *In re Energy Partners, Ltd.*, 409 B.R. 211, 225 (Bankr. S.D. Tex. 2009) ("Section 328(a) requires that subsequent developments rendering the fee arrangement improvident must be unforeseeable, not merely unanticipated . . . .").  Its willingness to settle for a multiple of its lodestar fees – rates times hours – is solely voluntary, Newbern asserts.

   Newbern also points the court to the September 13 Hearing as support for its contention that the firm is entitled to the full one-third contingency.  But, on the contrary, the court made clear during the September 13 Hearing that it did not intend to be bound to a one-third contingency pursuant to section 328.  *See* transcript of September 13 Hearing, at 4, ll. 8-12 ("I'm going to approve [your retention], but the record is going to reflect that I – I mean, I don't want to get stuck under Section 328, if this thing settles next week for $600,000, to pay you $100,000 [sic] for 15 minutes of work.").

While Newbern clearly spent more than 15 minutes on the matter, the court finds another reason for not being bound by section 328 to award in this case a substantial contingency fee. As noted above, the amount of unsecured debt in Debtors' case – the principal concern of the Trustee – was only $11,556.04.[4] Had the court realized this, it would not even have considered retention on a basis that could result in the award of a large contingency fee principally at Debtors' expense. Yet, though Mr. Newbern informed the court that Debtors would be able to propose a 100% plan for unsecured creditors, *see* transcript of September 13 Hearing, p. 3, ll. 11-12, 22-23, neither Newbern nor the Trustee disclosed to the court the minimal amount of unsecured debt owed by Debtors.[5]

Even had the court not made clear that it was not bound under section 328 to award Newbern one-third of whatever was recovered from the State Court Defendants, notice of the application to employ Newbern was sufficiently deficient to preclude Debtors being bound by the order employing Newbern. The September 13 Hearing followed only one day's notice. Though there is a dispute about whether Stovall received notice of that hearing, it is clear that Debtors did not. Rule 7004(b)(9) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE, applicable to the application to employ Newbern pursuant to Rule 9014(b), requires service both on a debtor's counsel and on the debtor.

---

[4]     It is worth considering that, had the Texas Supreme Court's reversal of the summary judgment been based only on the Trustee's argument (and thus *Kane*), recovery might have been limited to that amount. *See Reed v. City of Arlington*, 620 F.3d 477, 480 (5th Cir. 2010) (discussing District Court's judicial estoppel ruling, whereby the court ordered defendant City of Arlington to pay the entire judgment to the bankruptcy trustee, with the caveat that any funds not disbursed to creditors be returned to the defendant). Had that been the result in the case at bar, where the unsecured debt (and therefore the amount required by the Trustee) was known, Newbern's "one-third" would have been only approximately $3,850.

[5]     The court recognizes that such disclosure is not required by Rule 2014(a). Nevertheless, the significance of the amount of Debtors' debt is obvious, and it should have been brought to the court's attention.

In the present context – Debtors' state court counsel (Stovall) saying she had no notice of the hearing, Debtors' bankruptcy counsel at odds with Debtors, and a mere 24 hours between service and notice of the hearing and the hearing itself – the court cannot conclude that Debtors, not having received notice themselves, received the benefit of due process such that they should be bound by the order authorizing Newbern's retention.

While Newbern is not entitled to a one-third contingency fee, it is certainly not thereby barred from being compensated. Before deciding on the amount of compensation to which Newbern is entitled, the court must address an additional issue: Newbern's agreement with Clarke respecting division of fees.

C. Section 504 and Rule 2014

Debtors, in the Objection, argue that Newbern, through its arrangement with Clarke, violated Code § 504(a). Section 504(a) states:

> (a) Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share--
>   (1) any such compensation or reimbursement with another person; or
>   (2) any compensation or reimbursement received by another person under such sections.

Following the Hearing, the court, by letter, asked Newbern to explain how the firm could reconcile its arrangement with Clarke with this provision. In its *Response to Court's Letter Request dated January 12, 2011* (the "Response"), Newbern argues first that, as the firm is claiming a contingency fee pursuant to section 328, section 504(a) is inapplicable because it is not "compensation . . . awarded under section 330(a) . . .," (section 503(b)(2)), and so does not fall within the ambit of section 504(a)'s prohibition. Second, Newbern argues that, in any event, its arrangement with Clarke is an

"association" that comes within the exception to section 504(a) provided by section 504(b)(1) and Rule 2014(b).[6]

      1.  Newbern's relationship with Clarke

Clarke shares offices and some business resources with Newbern but has a separate law practice with clients of his own. In part due to the office-sharing arrangement, Clarke regularly provides assistance to Newbern in the latter's bankruptcy representations.[7] When Clarke works on one of Newbern's cases, Newbern bills his time at $250 per hour.[8] Newbern pays Clarke $166 per hour of the resulting fee and retains the balance in part as compensation for the resources and facilities used by Clarke.[9] Newbern did not disclose this arrangement to the court at the time of Newbern's

---

[6]    Section 504(b)(1) states:

(b) (1) A member, partner, or regular associate in a professional association, corporation, or partnership may share compensation or reimbursement received under section 503(b)(2) or 503(b)(4) of this title with another member, partner, or regular associate in such association, corporation, or partnership, and may share in any compensation or reimbursement received under such sections by another member, partner, or regular associate in such association, corporation, or partnership.

Rule 2014(b) states:

(b) Services rendered by member or associate of firm of attorneys or accountants. If, under the Code and this rule, a law partnership or corporation is employed as an attorney, or an accounting partnership or corporation is employed as an accountant, or if a named attorney or accountant is employed, any partner, member, or regular associate of the partnership, corporation or individual may act as attorney or accountant so employed, without further order of the court.

[7]    In fact, Clarke regularly appears before the court in Newbern's cases, including chapter 11 debtor representations in which Newbern is employed on a general retainer, the fees subject to full review under section 330. The court has always assumed that Clarke and Mr. Newbern were employed and paid by the same entity, and thus Clarke clearly fell within section 504(b)(1) and Rule 2014(b). Certainly Newbern has never in the past disclosed to the court its arrangement with Clarke.

[8]    Newbern billed 15.70 hours of Clarke's time in the case at bar at $200 per hour, and the remainder at $250 per hour.

[9]    Mr. Newbern's billing rate is $350 per hour.

employment. During the Hearing and by the Response, Newbern did not provide any formal documentation of this arrangement to the court, and the court assumes none exists.

> 2. Section 504(a) applies to Newbern's contingency fee

Leaving aside that the court made clear at the September 13 Hearing that Newbern's fees would be subject to review, and leaving aside the defects in the notice of the Trustee's application to employ Newbern, Newbern misconstrues the Code in arguing that contingency fees fixed under section 328 do not fall within section 504(a). The gist of this argument is that a contingency fee, not being subject to review under section 330(a), is not awarded under section 330. Such a fee thus is not one described by section 503(b)(2). As section 504(a) is limited in scope to compensation received under section 503(b)(2) (and section 503(b)(4), not relevant to the case at bar), Newbern reasons that section 504(a) is inapplicable.

However, section 330(a)(1) does not except from its scope *any* compensation awarded to "a professional person employed under section 327." While section 330(a)(1) makes an award of compensation "subject to sections 326, 328, and 329," sections 330 and 331 are the only provisions of the Code which authorize the payment of professionals such as Newbern. Indeed, if Newbern were not entitled to compensation under section 330, its compensation would not be allowable as an administrative expense, since section 503(b)(2) is the only statutory basis for according that status to compensation awarded to persons employed under section 327 (and section 1103).

Moreover, that section 330(a)(1) is "subject to" not only section 328 but also section 326 demonstrates that Congress did not intend by the qualifier to make an exception to section 330. Section 326 limits compensation of trustees. By making

section 330(a)(1) "subject to" section 326, Congress clearly meant to clarify that any award of compensation to a trustee must fall within section 326's limits. The reference to section 328 in section 330(a)(1) must be read similarly, to simply constrain a court awarding compensation to do so in accordance with the terms of retention applicable pursuant to section 328, which, like section 326, provides "[l]imitation[s] on compensation."[10]

Finally, even if a contingency fee arrangement were beyond the reach of section 504(a), that clearly was not the reason that Newbern did not disclose its relationship with Clarke in connection with Clarke's retention in the case at bar. As noted above, Newbern and Clarke regularly work together in bankruptcy representations, including many cases where compensation is based on a lodestar that is assessed for reasonableness under section 330(a)(3). Newbern has not in those cases disclosed its arrangement with Clarke.

For all these reasons, the court concludes section 504(a) is as pertinent to the Fee Request as it would be in any other case. For reasons discussed below, the court also concludes that Newbern's arrangement with Clarke is an agreement to share fees of the type proscribed by section 504(a).

### 3. Clarke is not a "regular associate" of Newbern

According to the plain language of section 504(b)(1) and most authoritative sources, including the majority of cases addressing the subject, Clarke is not a "regular associate" of Newbern. The case law is less than uniform, however, and the court acknowledges that, from a policy perspective, it is arguable that, as a practical matter, it might be better if Clarke could be considered a "regular associate" of Newbern. After

---

[10] Though many persons (including the court) make reference to section 328 as shorthand for the binding nature of contingency agreements under Fifth Circuit precedent, section 328 in fact governs *any* compensation arrangement with a professional, whether contingency or otherwise.

considering section 504 in conjunction with the disclosure regime for professionals, however, the court concludes it cannot do so.

"The starting point in discerning congressional intent is the existing statutory text." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004). An examination of the plain language of section 504(b)(1) plainly shows that Clarke is not a "regular associate" of Newbern.

Rule 9001(10) admittedly defines "regular associate" to mean "any attorney regularly employed by, associated with, or counsel to an individual or firm." As the rule appears to include as a "regular associate" not only attorneys employed by a firm but also attorneys "associated with" the firm, the definition is arguably broad enough to cover Clarke's relationship with Newbern. Because Rule 2014(b) permits a "regular associate . . . [to] act as [an] attorney . . . employed [in the case], without further order of the court," it appears at first blush that Clarke could be employed in the case at bar without full disclosure of his relationship with Newbern.

However, it is section 504(b)(1) which provides the exception to section 504(a). That section is not so broad. Rather, it provides that a "regular associate *in* a professional association, corporation, or partnership" (emphasis added) may share compensation. *See In re Peterson*, 2004 WL 1895201, at *5 (Bankr. D. Idaho Aug. 25, 2004) (notwithstanding Rule 9001's language, the plain language of section 504(b)(1) only allows an attorney to share fees with a member, partner, or associate in the same professional association, corporation, or partnership). It is clear that Clarke is not a "regular associate *in*" Newbern's firm, and that he therefore does not fall within the exception to section 504(a).

As to the arguably broad definition of "regular associate" in Rule 9001(10), that definition does not affect 504(b)(1)'s requirement that the "regular associate" be *in* the employed firm in order to share in compensation. Even if the court could consider Rule 9001(10)'s "with" as a substitute for section 504(b)(1)'s "in," in the court's view, it would be inappropriate to loosen a plainly stated statutory stricture based on ambiguity created by a preposition used in a procedural rule. In fact, Rules 9001(10) and 2014(b) can arguably be reconciled with section 504: the latter provision bars the sharing of compensation, while the two rules make clear a broader range of persons may work on a case. Thus one associated *with* an employed firm may work on a case but may only share in the compensation awarded in the case (as is proposed for Clarke) if he or she is *in* the firm.

An examination of the history of provisions addressing fee sharing in bankruptcy shows a clear trend toward prohibiting the sharing of compensation between professionals in different firms when proper disclosures have not been made and court approval obtained. Congress's pre-Code attitude toward the sharing of compensation, as codified in section 62 of the Bankruptcy Act of 1898 (the "Act"), was significantly more permissive than under section 504. As a prior edition of COLLIER ON BANKRUPTCY explained:

> Generally stated, the sharing of compensation between professionals in a bankruptcy case was not denounced except in a case where one of the professionals simply referred or forwarded [for a fee] the bankruptcy case to another professional who thereafter rendered all of the services. However, an exception was made in the case of an attorney who was even permitted to share compensation with "a partner or a forwarding attorney-at-law" who presumably contributed no services to the bankrupt.

COLLIER ON BANKRUPTCY ¶ 504.01 (15th ed. 1986).

The former RULES OF BANKRUPTCY PROCEDURE, adopted in 1973, imposed stricter fee sharing and more extensive disclosure requirements on professionals. Rule 219 wholly prohibited fee sharing based on a pure referral relationship (i.e., it prohibited fee sharing with "a partner or a forwarding attorney-at-law").[11] Subsection (d) of Rule 219 provided in part:

> This rule does not prohibit an attorney or accountant from sharing his compensation as trustee, receiver, attorney or accountant with a member or regular associate of his firm, or from sharing in the compensation received by his firm, or by any other member or regular associate thereof, and does not prohibit an attorney for a bankrupt or for a petitioning creditor from sharing his compensation for services rendered *with any other attorney contributing thereto.*

(emphasis added)

Rule 219 thus allowed fee splitting between attorneys regardless of whether they practiced in the same "professional association, corporation, or partnership," provided all attorneys receiving compensation contributed services to the debtor.[12] To receive compensation, however, an attorney also had to comply with Rule 215. Subsection (a) of this rule required an attorney to provide extensive disclosure of relationships relevant to the case in which the attorney was to be employed. Subsection (b) of the rule allowed a court to disallow compensation to an attorney who failed to disclose an adverse interest.

---

[11]     *See* COLLIER ON BANKRUPTCY ¶ 504.LH[2] (16th ed. 2010) ("The Advisory Committee Note to Rule 219(d) made clear that the sharing of compensation allowed between an attorney and a forwarding attorney . . . was no longer to be permitted unless the attorneys sharing had both contributed to the services for which the compensation was allowed.").

[12]     COLLIER ON BANKRUPTCY explains that, as section 504 incorporated or superseded the provisions of section 62 of the Act, it was no longer necessary to have a detailed rule addressing fee sharing. *See* COLLIER ON BANKRUPTCY ¶ 504.LH[2] (16th ed. 2010). Rule 219 was replaced by Rule 2016, which requires, among other things, sharing of compensation to be disclosed in the application for compensation. The Fee Request includes Clarke's time and charges but does not disclose the arrangement between Clarke and Newbern.

This general trend toward prohibiting the sharing of compensation by attorneys in different firms absent proper disclosure continued with the enactment of the Code and the adoption of the current FEDERAL RULES OF BANKRUPTCY PROCEDURE. Rule 215's disclosure requirements were incorporated into subsection (a) of new Rule 2014, which, unlike Rule 215, requires an applicant to state "any proposed arrangement for compensation" in the application for employment.

As for Congress's continuing concern with the sharing of compensation, the enactment of section 504 constituted another shift toward tighter regulation, with the plain text of section 504(b)(1) exempting only partners, members, and regular associates within the same professional association, corporation, or partnership from section 504(a)'s prohibition. As a leading treatise notes, section 504(b)(1) has been narrowly construed. *See* COLLIER ON BANKRUPTCY ¶ 504.03[1][a] (16th ed. 2010). As is the case here, "courts have held that office sharing and a regular contract relationship, by themselves, will not suffice to fit within the exception." *Id.* & n.5 (citing for this proposition *Peterson*, 2004 WL 1895201, *In re Greer*, 271 B.R. 426 (Bankr. D. Mass. 2002), and *In re Matis*, 73 B.R. 228 (Bankr. N.D.N.Y. 1987)). "Generally, a finding of improper sharing of compensation results in a denial or disgorgement of compensation." *Id.* ¶ 504.02[6].

While COLLIER also notes that, occasionally, "the issue of improper sharing of compensation is not so clear-cut," *see id.* ¶ 504.02[5], and fee sharing may sometimes be allowed, the treatise cites only two cases for this proposition. Both cases cited – *United States v. Miller, Cassidy, Larroca & Lewin (In re Warner)*, 141 B.R. 762 (M.D. Fla. 1992) and *In re Statewide Pools, Inc.*, 79 B.R. 312 (Bankr. S.D. Ohio 1987) – are

distinguishable from the case at bar. *Warner* involved reimbursement for a payment to an out-of-state attorney used to subpoena a material witness in another state, while *Statewide Pools* approved an arrangement whereby special counsel to a trustee proposed to pay a former officer of the debtor to assist in collecting some of the debtor's accounts receivable. All on-point authority appearing in COLLIER thus suggests that section 504(b)(1)'s exception should be strictly construed.[13]

With regard to case law, most courts interpreting section 504 have determined that an attorney working under an agreement such as that between Newbern and Clarke does not fall within the term "regular associate" as used in section 504(b)(1). *See, e.g.*, *Peterson*, 2004 WL 1895201, at *4-5 (rejecting argument that, assuming contract attorney with separate legal practice was an associate "regularly employed by, [or] associated with" debtors' attorney's firm pursuant to Rule 9001, such contract attorney fell within section 504(b)(1)'s exception; the court held that the plain language of section 504(b)(1) excluded attorneys not "in" the same firm from relying on section 504(b)(1)'s exception). Courts typically require an attorney to obtain court approval prior to employing a contract attorney. *See, e.g.*, *In re Kewriga*, 2002 WL 484942 (Bankr. D. Mass. Mar. 28, 2002) (denying fee application of debtors' attorney to the extent that the fees were generated by a contract attorney with respect to whom the debtors' attorney did not obtain prior court approval).[14] This "prior approval" requirement is really nothing

---

[13]     As for section 504's treatment in other secondary sources, NORTON BANKRUPTCY LAW AND PRACTICE only briefly addresses the section. Though NORTON considers section 504 to be "relatively antiquated," its treatment of the section accords with the strict interpretation advanced by COLLIER. *See* NORTON BANKRUPTCY LAW AND PRACTICE § 50:1 (3d ed. 2010).

[14]     It is debatable whether most contract arrangements actually present the issue of prohibited fee sharing. Presumably, payment of the contractor in most cases is not dependent on the employing firm collecting its fees; the firm will be liable to the contractor regardless of whether or not it is paid in the case on which the contractor worked. The court does not understand the Newbern–

more than a recognition that "[b]oth section 327 and [] Rule 2014 generally require approval of the bankruptcy court before an attorney can enter the employ of the estate," and therefore, "[i]n the absence of a bankruptcy court order approving retention, contract attorneys cannot be paid for services to the estate." *Tanzi v. Shulkin*, 2006 WL 2927660, at *7 (W.D. Wash. Oct. 12, 2006).  Thus, even an attorney who discloses his or her intention to employ a professional on a contract basis may run afoul of section 504 if the attorney fails to file documents showing that the non-exempt employee complies with section 327.  *See In re Tarasiak*, 280 B.R. 791, 793 (Bankr. D. Mass. 2002) (court denied fee application to the extent fees were generated by paralegal, where attorney had disclosed in his application for employment that part of his retainer was to be used to pay an outside paralegal to prepare bankruptcy schedules, but had failed to file an application representing that the paralegal was disinterested and did not hold an interest adverse to the estate).

There are, however, a few cases in which courts have interpreted section 504(b)(1) more broadly,[15] most notably *In re Worldwide Direct, Inc.*, 316 B.R. 637 (Bankr. D. Del. 2004), an opinion which raises questions regarding the extent to which a

---

Clarke arrangement to fall into this category, but even if it does, the disclosure issues addressed below would remain.

[15]    Two of the cases in which a court broadened section 504(b)(1)'s exemption address the status of attorneys acting "of counsel," and thus are not applicable to the case at bar.  *See Lemonedes v. Balaber-Strauss (In re Coin Phones)*, 226 B.R. 131, 132 (S.D.N.Y. 1998) (an attorney acting "of counsel" is often an attorney approaching retirement who has phased down his or her level of involvement with a firm and is not regarded as a general agent of the partners, and so will be regarded as a "member" for purposes of section 504 "so as to be free from statutory limitations on fee sharing arrangements"); *In re Sheehan Memorial Hospital*, 380 B.R. 299, 303 (Bankr. W.D.N.Y. 2007) (citing *Coin Phones* for the proposition that an "of counsel" attorney will be regarded as a "member" under section 504, and determining that two attorneys practicing in Rochester, New York had established a "limited 'of counsel' affiliation" with a California firm for purposes of a single case, noting that "[section 504] imposes no standards for firm membership" and "[a]lthough lawyers will usually affiliate with only one firm, they have on occasion maintained multiple 'of counsel' relationships at the same time").

strict reading of section 504 is in tune with current market realities in the legal profession.[16] The facts in *Worldwide* do not differ significantly from most section 504 cases: a law firm representing chapter 11 debtors had hired temporary employees through an employment service, and sought to receive compensation for their work. *Id.* at 647. The "ultimate question" before the court was whether these employees were "regular associates" for purposes of section 504(b)(1). *Id.*

The court began its analysis with the premise that the "paramount consideration in approving professional fees in chapter 11 cases is what is appropriate in the market." *Id.* The court then noted that recent legal market trends have seen immense growth in the use of temporary legal employees, many of whom do not even reside in the United States, to limit costs. *Id.* "To the extent that these cost-savings are passed on to clients and [the] debtors' estate," the court reasoned, "the use of temporary employees is laudable." *Id.*

The court went on to conclude that these temporary employees were "regular associates" for purposes of section 504. Rather than applying a strict statutory reading, the court determined that the employees were "regular associates" because "they essentially acted like associates of the firm" – among other things, they enjoyed fringe benefits, worked under the direct supervision of the firm's attorneys, and performed tasks similar to those performed by the firm's associates. *Id.* at 648. The court further noted that, since the case did not involve trafficking in bankruptcy cases or services, it "[did] not present the circumstances which the Code meant to address" through the enactment of section 504. *Id.* at 649. The court thus held that the temporary employees should be

---

[16]     *See also* NORTON BANKRUPTCY LAW AND PRACTICE § 50:1 (3d ed. 2010) (briefly describing black letter law under section 504 prohibiting fee sharing, but also stating that "[section 504] is relatively antiquated and may present certain problems with respect to more recent practices in bankruptcy law").

considered "regular associates" for purposes of section 504, though the court allowed the law firm to recover only the cost of employing the temporary employees. *Id.* Presumably, the court felt uneasy about allowing the law firm to make a profit from the work performed by the temporary employees, since one justification undergirding the decision to allow compensation for the temporary employees' services at all was that employing these workers would allow the law firm to pass savings on to the debtors' estates.

The arguments advanced in *Worldwide Direct* raise questions regarding whether it is sound policy to interpret section 504 strictly to preclude fee sharing with contract attorneys. It makes sense to allow law firms to employ contract attorneys where doing so would promote efficiency and ultimately result in cost-savings being passed on to clients. Here, Newbern bills clients $250 per hour for Clarke's work, a significant reduction from the $350 hourly fee charged by Mr. Newbern. As the *Worldwide Direct* court noted, such efficiency is "laudable." *Worldwide Direct*, 316 B.R. at 647.

Efficiency is not the only policy concern the court must consider, however, in determining the case at bar. As noted in decisions such as *Tanzi* and *Tarasiak*, section 327(a) requires that a professional seeking to be employed by the estate be disinterested and not hold an interest adverse to the estate, while Rule 2014 requires the professional to make disclosures, including "the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with [various parties in interest] . . . ." Though not as significant in a case like this one where employment is under section 327(e), rather than section 327(a), reading the Code and the Rules to allow compensation to Clarke – an attorney with his

own practice and clients and who, like Newbern, must meet the tests of section 327 –

without full disclosure and knowledgeable approval by the court would frustrate the

requirements of section 327.[17]   The court believes that the policy reasons behind these

requirements – that the estate be represented by a person free of conflicts whose interest

is advancing that of the estate – are at least as compelling as the arguments for efficiency

advanced in *Worldwide Direct*.   Indeed, the increasing limitations on fee sharing, as

noted above, have been matched by ever-greater requirements of disclosure by

professionals employed in bankruptcy cases.

What is more, in this case at least, Newbern could have had its cake and eaten it

too.  Had Newbern disclosed Clarke's status as a contract attorney to the court from the

beginning and filed the proper application for employment on behalf of Clarke, both

efficiency and ethics would have been served.  The court does not mean to suggest that,

because a law firm could submit an application for employment every time it employs a

contract attorney, the policy arguments advanced by the court in *Worldwide Direct* are

invalid.  In the situation where a large law firm seeks to employ dozens of contract

attorneys, for example to complete a time-sensitive document review, such a requirement

may indeed impose a heavy burden on the firm.  But the law is the law, and in any case,

submitting an application for employment on behalf of Clarke would not have burdened

Newbern.

In sum, Clarke is not a regular associate of Newbern.  Section 504(a) applies to

Newbern's fees.  As a result, granting the Fee Request would result in sharing of fees

between Newbern and Clarke in violation of section 504.

---

[17]     Even attorneys employed under section 327(e) must make the disclosures required by Rules 2014 and 2016.  Clarke made no such disclosure in the case at bar.

III. Ruling[18]

The court must now apply the law to dispose of the matter before it. In doing so, however, the court must take account of the effect of its decision in other cases in which Newbern has been employed and has utilized (or currently is utilizing) Clarke's services. The court must also consider – and provide guidance for – other professional firms that from time to time retain the assistance of contract employees or other outsiders.

A. The instant case

The court concludes and holds that section 504(a) does not allow Newbern to share with Clarke compensation received in the case at bar. That said, the court is satisfied that neither Newbern nor Clarke believed their arrangement fell within the prohibition of the statute. Further, their arrangement is not the sort section 504(a) and its predecessor were principally directed at – trafficking in bankruptcy cases – and the case law is less than uniform in applying section 504(a) in situations that do not involve trafficking. *See, e.g.*, *In re Worldwide Direct, Inc.*, 316 B.R. 637 (Bankr. D. Del. 2004).

Given the circumstances in this case, the diverse views of the courts interpreting section 504(a), and the legitimate policy arguments underscoring the majority interpretation of section 504 on the one hand, and decisions such as *Worldwide Direct* on the other, the court is reluctant to impose significant sanctions on Newbern or Clarke.[19] However, in order to give full meaning to section 504(a), the court cannot allow Newbern to profit by reason of Clarke's time. Accordingly, the court will entertain an application

---

[18] The court's ruling has been reviewed and approved by all bankruptcy judges of the Northern District of Texas.

[19] COLLIER ON BANKRUPTCY seems to suggest that draconian measures are in order, including total denial of fees. *See* COLLIER ON BANKRUPTCY ¶ 504.02[6] (16th ed. 2010) ("Generally, a finding of improper sharing of compensation results in a denial or disgorgement of compensation.").

from the Trustee, accompanied by proper disclosure, to retain Clarke as Newbern's co-counsel effective as of September 13, 2008, at an hourly rate of $166.[20]  Assuming these steps are taken, the court will grant Clarke fees of $18,490.

As to Newbern, its efforts warrant compensation and reimbursement of expenses. Excluding Clarke's time, Newbern earned fees of $26,890 and is entitled to reimbursement of expenses in the amount of $3,248.61.  The court accordingly awards Newbern such sums.

B.  Other Newbern cases

As the court has noted, Newbern and Clarke work together in many cases that are pending before it.  Clarke must be properly employed in these cases, after notice and disclosure respecting his arrangement with Newbern.  The court will entertain applications for Clarke's employment on a case-by-case basis; the court will consider granting approval of such employment retroactive to commencement of each engagement.

C.  Similar arrangements

It is not likely that other professional firms have arrangements exactly like that existing between Newbern and Clarke.  However, it is not uncommon for a professional firm to retain professionals on a contract basis.  If a firm anticipates retaining contract employees, this must be disclosed to and approved by the court at the time of the firm's employment or as soon as the need for contract assistance is recognized.  In the event a contract employee is retained by a firm, the firm must disclose as to that employee (as it

---

[20]    Courts occasionally allow an attorney who would otherwise be prohibited by section 504 from sharing in compensation to be employed retroactively.  *See, e.g.*, *In re Int'l Galleries, Inc.*, 2008 WL 4483824 (Bankr. N.D. Tex. 2008).

would be required to do as to any newly hired permanent employee) any connection with the debtor or other matter requiring disclosure under Rule 2014(a).[21]

### IV.  Conclusion

For the foregoing reasons, the Fee Request must be granted in part and denied in part, and the Objection addressed accordingly.  Newbern is directed to prepare and submit to the court an order disposing of the Fee Request as directed by this opinion.

# # # # END OF MEMORANDUM OPINION # # # #

---

[21] The court has doubts that more disclosure concerning a contract employee is necessary than would be required with a permanent employee.  Unless the contractor has, like Clarke, an independent practice, disclosure may be limited to what the employing firm would provide following any other hiring.